UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

HENRY FITZGERALD JONES,

    Petitioner,

v.                                                    Case No. 5:03-cv-240-Oc-10GRJ

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____

## ORDER DENYING PETITION

On June 24, 2003, Petitioner, *pro se*, initiated this action by the filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  The Petition, the Response to the Petition and the record submitted with the Response, Petitioner's Reply, and the other pleadings demonstrate that an evidentiary hearing is not warranted in this case, and the Court may resolve the Petition on the basis of the record.  See Habeas Rule 8(a).

### Convictions and Sentences

Petitioner challenges 1998 Citrus County state court conviction for one count of sale of cocaine within 1,000 feet of a school and one count of possession of cocaine within intent to sell.  Defendant was found guilty at a jury trial and the trial court sentenced Petitioner to two concurrent terms of twenty years imprisonment as

a habitual offender.[1]  Petitioner filed a direct appeal, and on October 20, 1998, the Fifth District Court of Appeals affirmed Petitioner's judgment and sentence *per curiam*.  See Jones v. Florida, 725 So. 2d 1136 (Fla. 5th DCA 1998).  Mandate issued on November 6, 1998.[2]

When Petitioner's direct appeal was pending, Petitioner filed a motion to correct his sentence, maintaining his sentence as a habitual offender was incorrect.[3]  Petitioner's motion was denied on November 25, 1998.[4]  Petitioner filed an untimely appeal, but the Fifth District Court of Appeal dismissed it for lack of jurisdiction on March 1, 1999.[5]

On October 15, 1999, Petitioner filed another motion to correct his sentence.[6]  The trial court denied Petitioner's motion in an order dated October 29, 1999.[7]  On January 31, 2000, Petitioner filed a "motion for belated appeal," and the appellate court denied Petitioner's appeal in an order dated March 2, 2000.[8]

---

[1] Petitioner's convictions were the result of a second trial, the first trial ended in a hung jury.  Doc. 11, App. M, N.

[2] Doc. 11, App. E.

[3] Doc. 11, App. F.

[4] Doc. 11 ,App. G.

[5] Doc. 11, App. H.

[6] Doc. 11, App. I.

[7] Doc. 11, App. J.

[8] Doc. 11, App. к.

On September 26, 2000, Petitioner filed a Rule 3.850 motion, alleging (1) ineffective assistance of counsel based upon his attorney's failure to move for disclosure of the confidential informant; (2) ineffective assistance of counsel based upon counsel's coercion of him not to testify; and (3) ineffective assistance of counsel based upon his attorney's failure to call an alibi witness.[9]  On October 12, 2001, the trial court held an evidentiary hearing on Petitioner's Rule 3.850 motion.[10]  In an order dated February 6, 2002, the trial court denied Petitioner's motion.[11]  The Fifth District Court of Appeal affirmed the trial court, *per curiam*.  See Jones v. Florida, 835 So. 2d 1148 (Fla. 5th DCA 2002).  Mandate issued on January 17, 2003.[12]

On March 10, 2001, while his Rule 3.850 motion was pending, Petitioner filed another motion to correct illegal sentence.[13]  In an order dated April 5, 2001, the trial court denied Petitioner's motion,[14] and the Fifth District Court of Appeal affirmed the trial court *per curiam*.  Jones v. Florida, 787 So. 2d 872 (Fla. 5th DCA 2001).  Mandate issued on June 1, 2001.[15]

---

[9] Doc. 11, App. L.

[10] Doc. 11, App. M.

[11] Doc. 11, App. N.

[12] Doc. 11, App. P.

[13] Doc. 11, App. Q.

[14] Doc. 11, App. R.

[15] Doc. 11, App. T.

On May 7, 2002, Petitioner filed a motion to correct sentence.[16] In this motion Petitioner raised three sentencing issues: 1) that his habitual offender designation was improperly imposed under Florida law because he did not have sequential predicate offenses; 2) that it was a fundamental error to impose a habitual felony offender sentence for the possession charge; and 3) that is was a fundamental error for the trial court to impose a habitual offender status when he had been released from commitment for over five years prior to the instant offenses.

The State responded to Petitioner's motion, submitting that Petitioner should not have received a habitual designation as to the possession count, Count II.[17] Thus, the State conceded that Petitioner should be resentenced to fifteen years as to Count II and the sentence for Court I should remain. In an order dated November 14, 2002, the trial court amended Count II of Petitioner's sentence to reduce the term from twenty years to fifteen years, eliminating Petitioner's habitual status as to Court II.[18] The Count II sentence remained to be served concurrently to Count One. Petitioner appealed this order, but his appeal was dismissed on June 17, 2003 for failure to prosecute.[19]

---

[16]Doc. 11, App. U.

[17]Doc. 11, App. V.

[18]Doc. 11, App. W.

[19]Doc. 11, App. X.

On January 13, 2003, Petitioner filed yet another motion to correct sentence.[20] After response by the State, the trial court denied Petitioner's motion by an order dated March 7, 2003.[21] Petitioner filed a direct appeal, and the Fifth District Court of Appeal affirmed the trial court's order.[22] On April 24, 2003, Petitioner filed a motion for rehearing, which was denied on June 10, 2003.[23] Mandate issued on June 27, 2003.[24] Petitioner filed the instant habeas petition on June 24, 2003 (Doc. 1), in which he claims the following grounds for relief:

(1)  Ineffective Assistance of Counsel

   (A) based on his attorney's failure to move for disclosure of the confidential informant;

   (B) based upon counsel's coercion of him not to testify;

   (C) based upon his attorney's failure to call an alibi witness;

(2) Illegal sentence

   (A) based upon the claim that his sentence violated the single subject rule of the U.S. Constitution;

   (B) based upon the claim that he does not qualify for Florida's habitual sentence.

---

[20]Doc. 11, App. Y.

[21]Doc. 11, App. Z, AA.

[22]Doc. 11, App. BB.

[23]Doc. 11, App. CC, DD.

[24]Doc. 11, App. EE.

## **Timeliness of Petition**

Absent any state court post-conviction proceeding that would have tolled the federal limitation period, a Petitioner who's conviction and sentence became final after the effective date of AEPDA has one-year from the date the conviction and sentence became final to file a federal habeas petition. See 28 U.S.C. §2244(d)(2). Respondents seek dismissal of the Petition pursuant to the one-year statute of limitations for §2254 petitions, as set forth in 28 U.S.C. § 2244. (Doc. 10). Respondents maintain that Petitioner's petition is not timely filed in that Petitioner's convictions and sentences became final on January 18, 1999. However in Petitioner's reply, Petitioner maintains that he is challenging his re-sentencing in Ground Two of his Petition, and therefore the statute of limitations begins to run on the date his re-sentencing became final.[25] (Doc. 18). In an order dated November 14, 2002, the trial court amended Count II of Petitioner's sentence. Accordingly, Petitioner's federal habeas petition, executed on June 24, 2003, is timely filed.[26]

## **Exhaustion/Procedural Bars**

There are two prerequisites to federal habeas review: (1) "the applicant

---

[25]As written in his Petition, Ground Two states:

Sentence illegal [sic] imposed pursuant to unconstitutional sentencing statute:

The statute utilized to impose [the] sentence in this case was found to violate the single subject rule of the United States Constitution. Failure to correct [my sentence] denies me my right to due process and equal protection guaranteed by the United States Constitution. (Doc. 1, pg. 15).

[26] See Walker v. Crosby, 341 F. 3d 1240 (11th Cir. 2003)(holding the statute of limitations applies to the application as a whole, running from the latest of several possible triggering dates).

must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner."[27] This means that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."[28] Petitioners' *pro se* status does not alone amount to good cause.[29]

A petition for writ of habeas corpus should not be entertained unless the Petitioner has first exhausted his state remedies.[30] The courts of Florida must be given the opportunity to consider the Petitioner's legal theory of a federal constitutional deficiency and the factual basis for that theory.[31] Concerns of comity require that exhaustion cannot be satisfied by the mere statement of a federal claim in state court.[32] Petitioner must afford the State a full and fair opportunity to address

---

[27] Upshaw v. Singletary, 70 F.3d 576, 578-579 (11th Cir. 1995) (citations omitted).

[28] Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir.) cert. denied, 513 U.S. 1061 (1994) (citing Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977)).

[29] See Harmon v. Barton, 894 F.2d 1268, 1275 (11th Cir.) cert. denied, 498 U.S. 832 (1990).

[30] Castille v. Peoples, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, *reh'g denied*, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198 (1982).

[31] Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513 (1971).

[32] Footman v. Singletary, 978 F.2d 1207, 1210-11 (11th Cir. 1992).

and resolve the claim on the merits.[33]  A full and fair opportunity involves the proper presentation,[34] and substance of, the federal constitutional claim.[35] Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies.  Additionally, a petitioner must avoid a procedural default by non-compliance with State substantive or procedural requirements.[36]

Respondents maintain Petitioner's two sentencing claims do not present federal issues and are procedurally barred.  The Court agrees.  To the extent Petitioner challenges how Florida law designated him as a habitual offender, issues decided under Florida's interpretation of its own sentencing law are State sentencing issues.  Because it is not the province of this Court to "reexamine state-court determinations on state-law questions,"[37] Petitioner's sentencing claims are not cognizable on federal habeas review and are due to be dismissed.

Further, a review of the records in state court show that Petitioner failed to properly present these claims on direct appeal of his resentencing or in his motion to correct sentence.  Therefore, grounds two and three are not exhausted. Moreover, because the time for pursuing these grounds has past,[38] Petitioner is

---

[33] Id.

[34] Castille at 351.

[35] Watson v. Dugger, 945 F.2d 367, 371-372 (11th Cir. 1991).

[36] Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-54, *reh'g denied*, 501 U.S. 1277 (1991).

[37] Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-480 (1991).

[38] See Fla.R.Crim.P. 3.850(g).

barred from raising these claims on federal habeas review.[39]  Petitioner has not shown either cause or prejudice that would excuse the default.  Likewise, Petitioner has neither alleged nor shown the applicability of the fundamental miscarriage of justice exception to this procedural default.

Respondents submit that Petitioner's remaining ineffective assistance of counsel claims, ground one of his Petition, have been properly presented to the State courts.  Therefore, the Court will review these claims on the merits.

## Standard of Review

After the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited.[40]  Specifically, a federal court must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[41] Moreover, each clause, "contrary to" and "unreasonable application," provides a separate basis for review.[42]

---

[39] If a Petitioner fails to exhaust his federal constitutional claim, the federal courts may find the unexhausted claim to be procedurally defaulted "if it is clear from state law that any future attempts at exhaustion would be futile." Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999) (per curiam).  In addition, if the Court finds that the unexhausted claim(s) would now be procedurally defaulted, the "exhaustion requirement and procedural default principles combine to mandate dismissal" of those claims.  Id (citing Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998).

[40] See Williams v. Taylor, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 1518-19 (2000).

[41] See 28 U.S.C. § 2254(d)(1).

[42] Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

Furthermore, under § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[43] The AEDPA also directs that the factual findings of the state court are afforded a presumption of correctness that can only be rebutted by clear and convincing evidence.[44] This presumption of correctness applies to factual determinations made by both the state trial and appellate courts.[45]

Finally, for a state court's resolution of a claim to be an adjudication on the merits so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.[46]

## Merits of Claims

In order to state a successful ineffective assistance of counsel claim, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that the attorney's deficient performance prejudiced the

---

[43] See also Van Poyck v. Florida Dept. Of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam) ("[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness").

[44] See 28 U.S.C. § 2254(e)(1).

[45] Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

[46] Wright v. Secretary for the Dept. of Corrections, 278 F.3d 1245, 1255 (11th Cir. 2002) cert. denied, 538 U.S. 906 (2003); see also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004).

defense. Strickland v. Washington, 466 U.S. 668 (1984). Further, in reviewing counsel's performance, the inquiry is whether counsel made a reasonable decision under prevailing professional norms and the court should presume effectiveness. Id. at 690.

Petitioner's first ineffective assistance of counsel claim is based upon his attorney's failure to move for disclosure of the confidential informant claims. With regard to this claim, the trial court cited Strickland v. Washington, 466 U.S. 668 (1984) and stated in part:

> The first ground the Defendant raised in his motion, was that his trial counsel was ineffective for failing to move for the disclosure of the confidential informant's identity and compel his production for deposition and testimony....In the instant case, the Defendant was alleged to have sold drugs to an undercover officer, not a confidential informant.
>
> During the evidentiary hearing the Defendant agreed that the credibility of Detective Vincent was the crux of the trial. In fact when the prosecutor asked the Defendant, "Detective Vincent came in and said that you are the one that sold the cocaine to him," the Defendant responded by saying "yes." The prosecutor went on to further state that, "there was no indication that the confidential informant had any involvement in the actual hand-to-hand transaction, right?' Again, the Defendant replied, "yes." In fact, at the hearing, the Defendant agreed that if the confidential informant was called and corroborated the testimony of Detective Vincent that it would be even more damaging to his case.

Petitioner's second ineffective assistance of counsel claim is based upon counsel's coercion of him not to testify. With regards to the claim, the trial court stated:

> During the evidentiary hearing, the Defendant admitted that he had four felony convictions. Additionally, he was convicted of two crimes of dishonesty (petit theft) prior to the trial. The Defendant also stated that Mr.

11

Travis did not threaten or coerce him into not testifying at the first trial. In fact, he stated that he did not want to testify at the first trial.

Mr. Cliff Travis, the Defendant's trial counsel, testified at the evidentiary hearing as well. When asked by the prosecutor if the Defendant has ever indicated to him that he wanted to testify, Mr. Travis replied that, "I don't ever recall that happening, I think because of his prior histories. He knew what could have happened and made the decision–he just knew he could not testify without that coming up." The prosecutor went on the further state that, "If he [the defendant] was adamant that he was going to take the stand, would you have prevented him from doing so?" Mr. Travis then stated. "I don't know if I would have prevented it. But, you know, we would have had a little chat on the record with the jury out, before that took place, I'll tell you that."

Petitioner's final ineffective assistance of counsel claim is based upon his attorney's failure to call an alibi witness. With regards to the claim, the trial court stated:

The last claim in the Defendant's motion, is that his trial counsel was ineffective for failing to call alibi defense witness. The Florida Supreme Court held in Magill v. State, 457 So. 2d 1367 (Fla. 1984), that "the decision on whether to interview, depose, or cross-examine certain witnesses or potential witnesses are tactical choices and are within the standard of competency expected." In the instant case, the record is abundantly clear that Mr. Travis tried to contact Mr. Williams at the Defendant's behest. He wrote numberous letters to the Defendant indicating that he could not locate Mr. Williams. He also tried to contact Mr. Williams by way of the telephone numbers presented to him by the Defendant. Additionally, the Defendant indicated that there was nothing preventing him from contacting Mr. Williams and bring him to Mr. Travis' office.

This Court cannot find in the record nor in the Defendant's claim that Mr. Travis' performance was deficient and even if there was deficient performance that it would have changed the Jury's verdict. This Court specifically finds that Mr. Travis' assistance and performance were reasonable under the prevailing professional norms. Strickland encourages and allows lawyers broad discretion to represent their clients by pursuing their own trial strategies.

This Court must evaluate the state court's adjudication of these claims pursuant to § 2254(d). First, this Court must identify the clearly established federal law with respect to this claim. "[I]n the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'" Maharaj v. Sec'y for Dep't Corr., 432 F. 3d 1292, 1308 (11th Cir. 2005)(*quoting* Williams v. Taylor, 529 U.S. 362, 412 (2001)). "The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (*per curiam*)(citations omitted). Under Strickland v. Washington, 466 U.S. 668 (1984), Petitioner is entitled to habeas relief when counsel's performance falls below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's errors and omissions, the result of the proceedings would have been different. Id. at 687. Further, in reviewing counsel's performance, the inquiry is whether counsel made a reasonable decision under prevailing professional norms and the court should presume effectiveness. Id. at 690. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Upon an independent review of the record, the state court's adjudication of Petitioner's claims was not contrary to clearly established federal law as the state

court specifically cited <u>Strickland</u> as the appropriate standard for reviewing Petitioner's ineffective assistance of counsel claims. Additionally, this Court does not find the state court's adjudication of the claims involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner has not presented clear and convincing evidence to rebut the presumption of correctness of the state court's determinations of the factual issues.

## Conclusion

As set forth herein, the Petition is **DENIED** with prejudice. The Clerk is directed to enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 21st day of September 2006.

_____
UNITED STATES DISTRICT JUDGE

c:   Henry Fitzgerald Jones
     Counsel of Record